UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER ZAGORSKI<br><br>v.<br><br>UNITED STATES OF AMERICA. | Criminal Case No. 11-cr-351 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Nearly four years after he was sentenced, the defendant Peter Zagorski, proceeding *pro se*, filed a Motion for Sentence Modification due to his status as a deportable alien, relying upon *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). *See generally* Def.'s Mot. Sentence Modification ("Def.'s Mot."), ECF No. 53.[1] The government opposes this motion on the grounds that any consideration of whether the defendant should have received a downward departure pursuant to *Smith* "has already been fully adjudicated before the Court, and there is no new information or legal authority presented by the defendant not already before the Court at the time of sentencing to warrant a modification of the sentence imposed by the Court." Gov't's Resp. Def.'s Mot. at 1 ("Gov't's Opp'n"), ECF No. 56. Upon consideration of the parties' written submissions, the underlying record, and relevant case law, the defendant's motion is denied for the reasons explained below.

**I.    BACKGROUND**

On October 9, 2012, the defendant was sentenced, on his plea of guilty, to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), to 99 months'

---

[1] After the instant motion was filed, this case was reassigned to the undersigned Chief Judge because the sentencing judge in this case, Judge Robert L. Wilkins, has been appointed to the D.C. Circuit.

imprisonment, followed by 10 years of supervised release—a sentence well below the applicable Guidelines range. *See* Judgment at 2–3, ECF No. 39; Minute Entry (Oct. 9, 2012). At the sentencing hearing, the Court determined that the advisory sentencing range applicable to the defendant was 262 to 327 months' imprisonment, *see* Sentencing Trans. at 10, ECF No. 46, which exceeded the statutory maximum sentence of 240 months' imprisonment, *see* 18 U.S.C. § 2252(b).[2]

In arriving at the below-Guidelines sentence, the Court considered a number of factors, including that the offense conduct involved the "distribution of child pornography," not merely "possession of child pornography," Sentencing Trans. at 39; that "[t]his was not a case where [the defendant] needed any arm twisting or convincing at all to engage in distribution of child pornography," but rather "was willing to speak directly to [a] child . . . to make her comfortable and willing to either [use] [a] web cam [for sexual activity] or to allow him to come there and engage in sex with her or both," *id.* at 40; that the pornographic videos and photographs that the defendant admitted to watching were "very violent," "disturbing," and "horrific," *id.* at 41; the immigration consequences of the defendant's sentence, *id.* at 42; sentences in comparable cases, *id.* at 42–43; the defendant's positive characteristics, *id.* at 44; and the fact that he was "not someone who [wa]s setting out to distribute pornography for . . . a commercial purpose;" and that, "to some degree," the defendant did not "completely comprehend[] the seriousness of what [he] w[as] doing," *id.* at 44.

---

[2] The Court adopted the recommended Guidelines offense level set out in the Presentence Report ("PSR"). Sentencing Trans. at 8, 10. The PSR determined that the defendant was in criminal history category I and had a total offense level of 39, under U.S.S.G. § 2G2.1(a), derived from a base offense level of 32, which was increased by 2 levels because the material involved a minor between the ages of 12 and 16; plus 2 levels because the offense involved the distribution of child pornography; plus 4 levels because the offense involved depictions of violence; plus 2 levels because the offense involved the use of a computer to solicit a minor to engage in sexually explicit conduct; and reduced by 3 levels for the defendant's acceptance of responsibility. PSR ¶¶ 31–47.

2

## II.     LEGAL STANDARD

The Supreme Court has instructed that "[f]ederal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" (quoting 18 U.S.C. § 3582(c))). In other words, absent clear statutory authorization, or authorization by the Federal Rules of Criminal Procedure, a court lacks jurisdiction to modify a final sentence. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks and alteration omitted)); *accord United States v. Arrington*, 763 F.3d 17, 22 (D.C. Cir. 2014) (construing a *pro se* defendant's motion as seeking review of his sentence under 28 U.S.C. § 2255, but finding a lack of jurisdiction to consider the appeal for failure to comply with statutory limitations on post-conviction relief).

The "narrow exceptions" authorizing modification of an otherwise final federal sentence include those set out in two statutes, 18 U.S.C. § 3582(c) and 28 U.S.C. § 2255. Specifically, § 3582(c) permits modification of an ongoing prison sentence under three enumerated limited circumstances, including when the Director of the Bureau of Prisons has so moved, when the U.S. Sentencing Commission has lowered the Guidelines applicable to the challenged sentence and authorized the modification in a policy statement, or when a statute or Federal Rule of Criminal Procedure 35 "expressly permit[s]" a modification. 18 U.S.C. § 3582(c)(1)–(2). Rule 35, in turn, permits, within 14 days after sentencing, correction of a sentence "that resulted from

arithmetical, technical, or other clear error," or reduction of a sentence on the government's motion that the defendant has provided substantial assistance.

Likewise, § 2255 authorizes consideration of a federal prisoner's motion to vacate, set aside, or correct his sentence if the sentence was imposed "in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255.  This motion must be filed within one year of the "date on which the judgment of conviction becomes final," or the date on which another specified trigger event occurs, *id*., § 2255(f)(1)–(4).  Since the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, places stringent restrictions on second or successive motions under 28 U.S.C. § 2255, *see* 28 U.S.C. § 2255(h), before a *pro se* defendant's sentence modification motion is construed as one for relief under § 2255, the defendant should be given the opportunity to withdraw the motion or to amend it to include all grounds he wishes to raise. *See Castro v. United States*, 540 U.S. 375, 377 (2003).

## III.   DISCUSSION

The defendant "request[s] a downward departure and sentencing modification . . . under [] *Smith v. United States*, 27 F.3d 649, 655 . . . (D.C. Cir. 1994)" and "a further reduction in his sentence for a violation against him under 18 U.S.C. [§] 3624(a) by delaying the release of all deportable aliens at the end of their legal sentence." Def.'s Mot. at 1.  The defendant fails to identify any express statutory authorization for consideration of his motion for a reduction in sentence.[3]  Even construing the pending *pro se* motion liberally, *see Arrington*, 763 F.3d at 22

---

[3] The government, addressing only the merits of the defendant's argument, has evidently assumed that the defendant's motion is properly before the Court.

(noting a court's "obligation to construe *pro se* filings liberally"), neither § 3582(c) nor § 2255 permits consideration of the motion, which, in any event, would fail on the merits.

### A. The Defendant's Motion Must be Denied for Lack of Subject Matter Jurisdiction

None of the enumerated exceptions for modification of a sentence under 18 U.S.C. 3582(c) applies here. Not only has the Director of the Bureau of Prisons made no motion, as required by § 3582(c)(1)(A), but also Federal Rule of Criminal Procedure 35 provides no basis for relief, under § 3582(c)(1)(B). Here, the defendant waited nearly four *years* to file his motion to reduce sentence, falling far outside Rule 35's fourteen-day limitation period to correct an "arithmetical, technical, or other clear error," none of which the defendant has even alleged or is apparent from the record. Fed. R. Crim. P. 35(a). Moreover, the government has not moved for a reduction based on the defendant's substantial assistance, and thus Rule 35(b) is inapplicable. Finally, § 3582(c)(2) does not authorize consideration of the defendant's motion because the Sentencing Commission has not amended the Sentencing Guideline applicable to the defendant, nor authorized modification of his advisory sentencing range. Accordingly, no provision of § 3582(c) empowers the Court to review the defendant's instant motion.

The defendant's motion would fare no better under 28 U.S.C. § 2255, since he argues merely that the sentencing judge should have imposed a lower sentence in light of the defendant's status as a deportable alien, and this alleged defect is not the type cognizable under § 2255. To be clear, however, the Court declines to construe the defendant's motion as brought pursuant to 28 U.S.C. § 2255, since he makes no allegation that his sentence is unconstitutional, was imposed without jurisdiction, or exceeded the maximum lawful sentence.[4] Indeed, "the

---

[4] If the Court were to recharacterize this motion as a first § 2255 motion, the Supreme Court has instructed that "the district court must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or

defendant does not even seek the full amount of relief contemplated by [§] 2255, which is the right to be released from prison," which further militates against construing the defendant's motion as a motion pursuant to § 2255. *United States v. Pletnyov*, 47 F. Supp. 3d 76, 80 (D.D.C. 2014) (declining to construe a *pro se* motion as one under § 2255, noting that the defendant sought only a six-month sentence reduction); see *also United States v. Smith*, 136 F. Supp. 3d 4, 7–8 (D.D.C. 2015) ("Where a prisoner files a habeas petition that raises a claim that is 'neither jurisdictional nor constitutional' and involves neither a 'fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure,' such a case 'does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962))); *Douglas v. United States*, 306 F. Supp. 2d 16, 18 (D.D.C. 2004) (declining to "consider the petitioner's . . . motion for relief under 28 U.S.C. § 2255 because he d[id] not invoke that statute in challenging the court's imposed sentence"). For these reasons, the defendant's motion is not considered as seeking relief under § 2255.[5]

### B. The Defendant's Motion Is Otherwise Without Merit

Even if the defendant's motion were properly before the Court, however, it would fail on the merits. Contrary to the gravamen of the defendant's motion that he is entitled to a sentence reduction because his "status as a deportable alien is likely to cause a fortuitous increase in the

---

successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has." *Castro*, 540 U.S. at 383. Having declined to construe the defendant's motion as a first § 2255 motion, such warnings are not necessary.

[5] In any event, a § 2255 motion is subject to a one-year time limit, *see* 28 U.S.C. § 2255(f), and, as previously noted, the defendant's motion came almost four years after his sentence was imposed. Although "equitable tolling applies to motions filed pursuant to § 2255," *United States v. McDade*, 699 F.3d 499, 504 (D.C. Cir. 2012), the defendant has shown no "diligence in pursuing his claims" nor "extraordinary circumstances," *id.* at 505.

severity of his sentence," *Smith*, 27 F.3d at 655, this factor was considered at the time of sentencing.

The PSR and the parties' sentencing memoranda thoroughly addressed the defendant's status, and they explicitly cited *Smith*. *See, e.g.*, PSR ¶ 85 ("The parties agreed that a downward departure of up to six months may be warranted, based upon [the defendant's] status as a removable alien, pursuant to [*United States*] *v. Smith*, . . . 27 F.3d 649 (1994)."); *id.* ¶¶ 109–11 (listing "factors that may warrant departure," including that "[t]he defendant's present status precludes him from eligibility for participation in certain programs" and that, under *Smith*, "a downward departure may be appropriate if the defendant's status as a deportable alien is likely to cause fortuitous increase in the severity of confinement"); Gov't's Sentencing Mem. at 28–30 ("The Court should lower [the defendant's] sentence based upon the increased severity in his conditions of confinement because of his pending deportation to Poland."); Def.'s Sentencing Mem. at 2 n.3.

The Court also heard argument about the defendant's status during the sentencing hearing. *See, e.g.*, Sentencing Trans. at 20 (defense counsel arguing that "there's [no] question that [the defendant] is going to be deported at the conclusion of his sentence to Poland, a place he has not been since he was 15 years old"); *id.* at 34–35 (defense counsel asserting that "prison is twice as hard for deportable aliens" because they "don't get to participate in any programs, . . . to go to a halfway house, [or] . . . to do any of the things that make prison life move by at a decent pace"); *id.* at 35 (defense counsel underscoring that "60 months here is really I think much more punitive than 60 months for a citizen would be, than for an American citizen, and we ask the Court to consider that"). In addressing the factors set forth at 18 U.S.C. § 3553(a), the sentencing judge expressly considered the defendant's status as a deportable alien. *See, e.g.*, *id.*

7

at 42 (noting "the potential, and . . . near certainty, of [the defendant's] eventual deportation after serving a sentence, and the fact that as a deportable alien, he will not be able to participate in the programming and will not have various options available to him that would otherwise be the case" and that "it's certainly going to be a hardship on [the defendant] and his family to be in that position . . . while incarcerated, and then to have to leave the country"). Thus, to the extent that the defendant's motion contends that the sentencing judge failed to account for the defendant's status as a deportable alien, he is patently wrong. The defendant's status as a deportable alien was fully considered during sentencing, and the sentence imposed was well below both the statutory maximum and the applicable sentencing range.

## IV. CONCLUSION

Accordingly, the Court lacks subject matter jurisdiction to consider the defendant's Motion for Sentence Modification. An Order consistent with this Memorandum Opinion will be contemporaneously entered on the docket.

Date: November 18, 2016

_____
BERYL A. HOWELL
Chief Judge